■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CARL WEST Appellant. — Casey, J.

On December 9, 1982, at about 11:30 P.M., the complainant, Thomas Rohr, went to Clyde's Disco on Central Avenue in the City of Albany. There he spent three to four hours in the company of defendant and Johnny "Neal" Turner (*see, People v Turner,* 110 AD2d 974). During this association, Turner obtained a guest check from the bartender, on which he wrote his name and address, and gave it to Rohr. Later, at the request of his boss, Rohr agreed to return to work at the Central Cafe and left Clyde's at about 3:30 to 3:45 A.M. Although the bartender and doorman of Clyde's testified that Rohr left with defendant and that Turner followed a minute or two later, Rohr claimed he left alone. In any event, Rohr testified that he was walking along Central Avenue when defendant called his name; after Rohr responded, defendant requested an exchange of phone numbers, which they did. Defendant then struck Rohr on the shoulder and in the stomach, causing him to fall in an alleyway near Clyde's. Turner then took Rohr's wallet and gave it to defendant, who kicked Rohr repeatedly in the head and stomach while Turner watched. Albany Police Detective John Krikorian, while investigating an unrelated incident, found Rohr unconscious in the alley. The guest check containing Turner's name was found beneath Rohr's body and supplied the lead to the identity of the perpetrators.

Several days later, Krikorian obtained a statement from Rohr implicating defendant in the crime. On December 11, 1982, Krikorian obtained a statement from Turner implicating defendant as the instigator of the robbery. The bartender and doorman of Clyde's identified a photograph of defendant as being the person with Rohr and Turner on the night of the incident.

On April 15, 1983, a suppression hearing was held and defendant's motion to suppress his statements and those of Turner, along with the identifications of the bartender and doorman, was denied. Since the statements of defendant and Turner implicated each other, they moved for a severance. These motions were also denied and defendant contends on this appeal that the refusal of the trial court to grant him a separate trial was reversible error. "A motion for a separate trial is directed to the sound discretion of the trial court, subject to review only for an abuse thereof" (*People v Bornholdt,* 33 NY2d 75, 87, *cert denied sub nom. Victory v New York,* 416 US 905). Significantly, in denying the severance, the trial court drastically limited the use that the prosecution could make of the statements at trial. Introduction of the statements on the prosecutor's direct case

was precluded, and if defendant or Turner elected to take the stand, they could not be interrogated on cross-examination about that portion of the statements wherein each said they saw the other commit the crime. These limitations removed any prejudice to defendant that might have otherwise occurred (*see, People v Ward,* 107 AD2d 892) and renders meritless defendant's claim that the denial of the motion for a severance deprived him of a fair trial (*see, People v Haynes,* 88 AD2d 1070).

In regard to defendant's contention that his conviction is not adequately supported by credible evidence, we find this claim also to be untenable. Rohr spent three hours in Clyde's with defendant and had ample opportunity to become sufficiently familiar with defendant's appearance to make a positive identification, even without photographic corroboration. Despite some inconsistencies involving the amount of money taken from Rohr, the injuries he sustained and whether he left Clyde's alone, the basic facts, i.e., that he was beaten by defendant and his money taken, are not in doubt.

Furthermore, and again contrary to defendant's claim, his arrest without a warrant was on "probable cause" supported as it was by the photographic identification of defendant made by the bartender and doorman, by the information supplied by Turner and by the identification from the victim himself. As to the in-court identification of defendant by the bartender and doorman, that was also proper since these witnesses had independent bases, other than the photographs, from the 3 to 3½ hours they observed defendant in Clyde's, on which to predicate the reliability of their in-court identifications (*see, People v Hall,* 81 AD2d 644).

Finally, we find defendant's sentence as a second felony offender of 12½ to 25 years was statutorily permissible and appropriate in the circumstances. Defendant argues that his conviction of the predicate felony was unconstitutionally obtained. Contrary to his argument, once the prior conviction is established by the prosecution beyond a reasonable doubt, the burden shifts to defendant to show that the conviction was unconstitutionally obtained (CPL 400.21 [7] [b]; *People v Harris,* 61 NY2d 9). The trial court held a full evidentiary hearing on this issue. Contrary to defendant's claim that his plea to the prior felony was induced by his counsel's promise that he would receive 0 to 7 years, the transcript revealed that, at the time of sentence, defendant repeatedly denied he had received any promise. Defendant's prior counsel confirmed this fact and defendant raised no objection to the prior sentence at the time it was imposed. Defendant was, therefore, properly sentenced as a

second felony offender (*People v Harris, supra*). Accordingly, the conviction should in all respects be affirmed.

Judgment affirmed. Mahoney, P. J., Casey, Weiss and Levine, JJ., concur.